**NEW YORK CITY COALITION FOR COMMUNITY HEALTH et al.,**
**Plaintiffs,**

v.

**John V. LINDSAY et al., Defendants,**
**Committee for Better Health Services on the Lower East Side, Plaintiff-Intervenor.**

No. 72 Civ. 4858.

United States District Court,
S. D. New York.

June 12, 1973.

Richard S. Panebianco, David P. Glasel, Brooklyn, N. Y., of counsel, for plaintiffs New York City Coalition for Community Health, Williamsburg-Greenpoint Comprehensive Health Planning Board, East Harlem Tenants Council, Inc., Ad Hoc Committee for the East Harlemization of CHP, Dolore Torres and Thelma Hamilton.

Louise Lander, New York City, MFY Legal Services, Inc., for plaintiff Ad Hoc Committee for the East Harlemization of CHP and for plaintiff-intervenor.

Mark H. Spires, Long Island City, N. Y., Lloyd Constantine, of counsel, for plaintiffs South Jamaica Steering Committee, Inc. and Melvin King.

Robert P. Borsody, New York City, for plaintiffs Sidney Von Luther, Jesse Gray, Henry Hicks, Pedro Velez, Lillian Bloom, Robert I. Postel and Natalie Becker.

Whitney North Seymour, Jr., U. S. Atty., for the Southern District of New York, for the United States; by Peter A. Herbert, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, for defendant State Officials; by Samuel A. Hirshowitz, Maria L. Marcus, New York City, of counsel.

Norman Redlich, Corp. Counsel, New York City, for defendants Lindsay and Chase; by David W. Fisher, Milton Weinberg, New York City, of counsel.

GURFEIN, District Judge.

This is an action which seeks, *inter alia*, declaratory and injunctive relief

against the Secretary of Health, Education and Welfare ("the Secretary" or "HEW"), the Mayor of the City of New York, the Chairman of the Comprehensive Health Planning Agency of the City ("City Agency"), the Chairman and the Executive Secretary of the New York State Health Planning Commission ("State Commission"). The issues raised by the plaintiffs concern Federal grants made to the City Agency which was established by Executive Order of the Mayor effective October 1, 1971. Relief is sought on the theory that the claim arises under the Federal legislation governing areawide comprehensive health planning, § 314(b) of the Public Health Service Act, 42 U.S.C. § 246(b), and a grant application executed pursuant thereto.

The plaintiffs are ten individuals and (including the plaintiff-intervenor) six community organizations. Five of the individual plaintiffs are chairmen of groups that have sought to become *local* comprehensive health planning *district* boards under the City Agency. The community organization plaintiffs are local membership groups interested in the planning of health services. No class action is alleged. The plaintiffs allege that the City defendants have violated the governing Federal statute, 42 U.S.C. § 246(b) as well as the grant application executed by them, and that the State and Federal defendants have failed and refused to carry out their duty to enforce the statute and the obligations represented by the grant application.

To understand the specific complaints some history must be reviewed. In 1966 the Congress provided for Federal financial assistance to be granted to State and areawide comprehensive health planning agencies.[1] By the Partnership for Health Amendments of 1967 and by the

Public Health Services Amendments of 1970, its life was extended through 1973.

Federal funding was offered to spur coordinated and flexible planning of health resources. Areawide agencies, as distinguished from the statewide health planning agencies, were provided for, 42 U.S.C. § 246(b), because project grants to such agencies "would stimulate the development of essential planning activities in areas where the need is very great." House Report No. 2271, 89th Cong. 2d Sess., 1966 U.S.Code Cong. and Adm.News, p. 3833. The legislation envisaged participation by local government and voluntary health organizations. See Senate Report No. 274, 90th Cong. 1st Sess., 1967 U.S.Code Cong. and Adm.News, pp. 2079–2080.

In 1970 it was provided that consumers of health services shall constitute a majority of the areawide health planning council which was mandated by statute. 42 U.S.C. § 246(b)(2)(A). The area council advises the area agency on local health programs.

The City Government early sought to take advantage of the federal funding. On March 29, 1971 the Mayor's Organizational Task Force for Comprehensive Health Planning (MOTF) which had been created by the Mayor's Executive Order in 1969, submitted a grant application to the State for ultimate submission to the Secretary for the purpose of funding the area agency to be created. Since the statute required "reasonable assurances" that there would be created an areawide health planning council, the grant application contained the assurance that the board of directors of the City Agency to be created would act as such council in the manner prescribed. But the grant application went further and stated that there would be established *district* planning councils (District Boards) and that during the proc-

---

1. In the jargon of comprehensive health planning, the State agencies are frequently referred to as "A" agencies, after the location of their funding authorization in Public Health Services Act § 314(a), 42 U.S.C. § 246(a), and the area-wide agen-cies are referred to as the "B" agencies, their funding authorization being found in § 314(b) of the Act, 42 U.S.C. § 246(b). The City Agency is a "B" agency.

ess of delineating 33 proposed Local District Boards, public hearings would be held.

An organizational grant was awarded to MOTF by the Secretary in July 1971 for the organization of the appropriate areawide agency. No operational grant was made for that year. The 71 members of the board of MOTF became members of the board of the City Agency which was created by the Executive Order of the Mayor of August 30, 1971, referred to above. Executive Order No. 48, Establishment of Comprehensive Health Planning Agency for the City of New York.

Before this Executive Order was promulgated, MOTF had already established in the Fall of 1970, 8 local experimental planning boards in Harlem, Williamsburg, Bedford-Stuyvesant, the lower East Side, the North Bronx, Far Rockaway, Northwest Queens and East Harlem. These neighborhoods are poor neighborhoods. The experimental boards banded together as the "New York City Coalition for Community Health," ("the Coalition") which is now one of the plaintiffs. · The Coalition allegedly tried to participate in the decision making process of MOTF, the City defendants and HEW allegedly to no avail. When, in July 1971, MOTF's grant application was approved, *all* the local experimental boards were officially terminated by the City defendants. The individual plaintiffs who had been chairmen of two of the Local Boards were not elected to the new board of the City Agency.

The City Agency received an operational grant in its second year.

With this background, we may now look at the amended complaint. The plaintiffs complain in two categories. The first category is (a) that there is not a consumer majority on the board of directors of the City Agency; (b) that there is frequently no majority of consumers in attendance; (c) that the staff dominates the board; and (d) that the board subordinates its function to the interests of the City Health Services Administration ("HSA," a department of the City Government, the Administrator of which is also the Chairman of the City Agency).

The second category of complaints is (a) that the City Agency has failed to hold public hearings as promised in its grant application during the process of delineating boundaries for the 33 proposed Local District Boards; (b) that it has failed to date to establish even one of the 33 proposed Local District Boards although its grant application projected formulation of all such Boards by April 1972; (c) that it has failed to perform *any* of its work programs in various substantive health and health related areas, as projected in its grant application.

The plaintiffs charge the defendants with having violated their obligations both under the statute and the grant application. The plaintiffs seek declaratory relief to that effect and injunctive relief as well requiring (1) the convening of public hearings in the complaining localities for the purpose of determining appropriate District boundaries; (2) the establishment of Local District Boards throughout the City; (3) the establishment of a consumer majority on the City Agency board of directors; (4) an order that the board of directors conduct business only when there is a majority of consumers actually present; (5) the removal of the City Agency from the control of HSA; (6) the removal of the Health Services Administrator, Gordon Chase, from his position as City Agency Chairman. The plaintiffs also request (7) an accounting of all Federal and Municipal funds received by the City Agency since October 1, 1971; and (8) an order placing the City Agency in receivership.

The defendants now move to dismiss the complaint on two grounds: (1) that the Court is without jurisdiction over the subject matter; and (2) that the complaint does not state a claim for relief. The City asks for summary judgment in the alternative. The plaintiffs

also move for summary judgment on their claim that the Court should order that a majority of the board of directors be consumers.

■ The motions for summary judgment must be denied, in any event. The City defendants claim that there is a majority of consumers and the determination of the disputed question of fact requires a trial.

Before addressing myself to the jurisdictional motions it would be fair, since this is a matter of public interest, to re-state the contentions of the defendants on the merits which they urge in support of their motion to dismiss for failure to state a claim. They contend that the only statutory duty it is incumbent upon them to fulfill is to assure that there is a majority of consumers on the board, ·and that this has been done. They contend that they are not bound by the self-imposed conditions of the grant application which were not required by the statute or by any requirement of HEW or the State. They say that, in any event, they did canvass the local communities and did hold public meetings and that they found it impractical and unnecessary to hold formal public hearings. They say, in effect, that they have been moving with deliberate speed, in the circumstances, to set up Local District Boards but that the political temperament of the local communities will not brook time pressures. In any event, they argue that these are all matters for the discretion of the Secretary and that if he is not complaining a Court should not intervene.

### JURISDICTION

The plaintiffs allege Federal question jurisdiction with a jurisdictional amount in controversy in excess of $10,000. (28 U.S.C. § 1331(a)); a mandamus jurisdiction against the Secretary (28 U.S.C. § 1361); a pendent jurisdiction over the State and City defendants; and an original jurisdiction to review the action or non-action of the Secretary under Section 10 of the Administrative Procedure Act (5 U.S.C. § 702). The plaintiffs concede that there is no constitutional issue. The defendants contend that there is neither a Federal question nor a matter in controversy involving $10,000.

The plaintiffs do not here press jurisdiction under the Civil Rights statute. And since the affirmative grant under 5 U.S.C. § 702 remains in doubt, jurisdiction must lie either in '§ 1331 as arising under a law of the United States or as part of the mandamus jurisdiction over a Federal officer. In either case, the jurisdictional amount of $10,000 must be satisfied. Aguayo v. Richardson, 473 F.2d 1090, 1101–1102 (2 Cir. 1973). The law of the United States under which the claim may arise is, as we have seen, Section 314(b) of the Public Health Service Act, 42 U.S.C. § 246(b).

### Civil Remedy Under Statute

It is true that no civil remedy is specifically provided in that statute. The Secretary is given the power to withhold payments from "A" agencies (see Note 1, *supra*) after reasonable notice and opportunity for hearing if "there is a failure to comply substantially with either —(A) the applicable provisions of this section; (B) the State plan submitted under such subsection; or (C) applicable regulations under this section." 42 U.S.C. § 246(g)(3). There seems to be no counterpart for withholding funds from "B" agencies, like the one here involved. On the face of the statute there appears to be no sanction against failure of areawide agencies to comply except for the threat of not getting funds for the succeeding year.

■ It has been thought that where the only remedy given the Secretary of Labor is so drastic as to require termination of the project, the Congress could not have intended that as the exclusive remedy. Gomez v. Florida State Employment Service, 417 F.2d 569 (5 Cir. 1969—construing the Wagner-Peyser Act, 29 U.S.C. § 49 et seq.); and see Cook v. Ochsner Foundation Hospital, 319 F.Supp. 603 (E.D.La.1970—construing the Hill-Burton Act, 42 U.S.C. § 291

et seq.). There is no doubt that when it can fairly be said that the Congress intended to benefit a particular class in its statutory scheme, a civil remedy will be implied for such beneficiaries. See Euresti v. Stenner, 458 F.2d 1115, 1118 (10 Cir. 1972, per Clark, Associate Justice —also concerning the Hill-Burton Act).

The question is, then, are there plaintiffs who, under the Public Health Service Act, may fairly be said to be its beneficiaries?

The Hill-Burton Act cases, *supra*, held to be beneficiaries the ultimate consumers of hospital services who were indigent. "[T]he Act was passed to ensure that the indigent would be supplied sufficient hospital services when needed." *Euresti, supra*, 458 F.2d at 1118. In the statute here involved there is no claim that treatment has been denied anyone. The claimed beneficiaries wish to play a political role in the planning of community health services. That is a step removed from consumption of health services. Yet, it seems to me that the Congress intended to create a quasi-governmental structure to work alongside the formal governmental structure in health planning, and that the beneficiaries were to be the local communities themselves and their indigenous representatives. The exclusion of the poor from participation in planning, if contrary to the statute, might enlist a civil remedy. The exclusion of a whole area—an entire community—might likewise.

Of course, it is unrealistic to fail to recognize that the case at bar reflects a conflict of political personalities. The

plaintiffs are saying that the *wrong* people were chosen for the board of the City Agency and that the *right* people were excluded. They also fear that in electing the District Boards the same invidious political choice will be made. So far as the method of selection is concerned, unless it is racially discriminatory, the Federal Courts should not interfere, but should rather permit the choice to be determined by the interplay of political forces. But here, in effect, the plaintiffs contend that they are representing not themselves but the people in their neighborhoods who have been, thus far, denied a voice in planning. It also seems to be the view of HEW that the setting up of the Local Boards is urgent.[2]

HEW apparently considers the creation of District Boards a *sine qua non* of the project. It recognizes the same kind of Congressional intention that I have found. HEW is seeking to enforce the assurances given in the grant application, treating these, although non-statutory, as essential.[3]

█ I find that, within the intendment of the Public Health Service Act, the Congress intended the representatives of local communities to have a private right of action to carry out the purposes of the statute.

The question need not now turn, as well, on the mandamus statute, 28 U.S.C. § 1361, for the relief may be a declaratory judgment or some other form of relief that is not strictly the mandamus of a Federal officer. *Cf. Aguayo, supra*, 473 F.2d at 1101.

---

2. It is signficant that the Secretary's representatives in approving the operational grant for the second year on December 12, 1972 did impose two conditions: "1. Three poor persons will be appointed to the Board of Directors; and 2. A plan of action concerning District Boards will be developed and submitted to [the Regional Director] no later than February 15, 1973. The plan should do three things: a. articulate an overall goal statement concerning coverage of New York City with District Boards; b. state

objectives for the establishment of District Boards during the budget period covered by this award, including a time table; c. detail projected staff, committee and board activities designed to achieve the stated objectives."

3. I have been informed that three poor persons have already been put on the Board, but I have not been advised what compliance, if any, the City Agency has made with respect to the "plan of action concerning District Boards."

### Exhaustion of Remedy

■ The defendants argue, as they did in Rosado v. Wyman, 397 U.S. 397, 405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), that the District Court should decline jurisdiction because HEW was engaged in a study of the very matter. See 414 F.2d at 176.

Under the teaching of Rosado v. Wyman, *supra,* the circumstance that HEW is concerned with the creation of District Boards does not limit the judicial remedy of the plaintiffs. As Justice Harlan noted with respect to the AFDC program, equally applicable here, "Petitioners do not seek review of an administrative order, nor could they have obtained an administrative ruling since HEW has no procedures whereby welfare recipients may trigger and participate in the Department's review of state welfare programs." Hence, "neither the principle of 'exhaustion of administrative remedies' nor the doctrine of 'primary jurisdiction' has any application . . ." (397 U.S. at 406, 90 S.Ct. at 1215).[4]

Before we conclude, however, that there is Federal jurisdiction, at least with respect to the alleged statutory violation of failing to put a majority of consumers on the area agency council, we must determine whether the jurisdictional requirement of $10,000 is present.

### Amount in Controversy

The several defendants press the contention that the matter in controversy does not exceed the jurisdictional amount of $10,000. In its most recent exposure to the question under § 1331, our Court of Appeals avoided answering it, apparently hoping it will go away if the Congress adopts the recommendations of the Administrative Conference, see Aguayo v. Richardson, *supra,* 473 F.

2d at 1101, n. 15, a wish in which District Judges heartily join.

In the meantime we have to recognize that not all judicial thinking on the subject is consistent. The Supreme Court has ruled that, even in a class action, the claims of the plaintiffs may not be aggregated *except* (in a multiple plaintiff action) where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." Snyder v. Harris, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). That would seem to imply that the detriment to the defendant is to be rejected as a measure of the jurisdictional amount. Yet it has been said on high authority that the amount in controversy may be measured either by the value to be gained by the plaintiff or the cost to the defendant. Tatum v. Laird, 144 U.S.App.D.C. 72, 444 F.2d 947 (1971), rev'd on other grounds, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). Because the Court of Appeals of this Circuit has not resolved the question, I must, as a District Judge, adhere to my belief that the Supreme Court has not accepted either aggregation, or measurement by the defendants' cost, except in limited circumstances.[5] *Cf.* Bass v. Rockefeller, 331 F.Supp. 945 (S.D.N.Y. 1971).

■ On the other hand, if we find one plaintiff who satisfies the test of jurisdictional amount, the others with Federal claims may come along on the theory of pendent jurisdiction. Aguayo v. Richardson, *supra,* 473 F.2d at 1102; see also Almenares v. Wyman, 453 F.2d 1075, 1083 (2 Cir. 1971).

■ It appears reasonable to assume that the plaintiffs who constituted the local experimental boards under MOTF had staffs and quarters which would

---

4. If the action of HEW is considered to go further than "a study," Rosado v. Wyman, 414 F.2d 170, 176 (2 Cir. 1969) and to be the equivalent of administrative action, "[t]he right of judicial review is ordinarily inferred where congressional intent to protect the interests of the class

of which the plaintiff is a member can be found." Barlow v. Collins, 397 U.S. 159, 167, 90 S.Ct. 832, 838, 25 L.Ed.2d 192 (1970).

5. See Note, Federal Jurisdiction over Challenges to State Welfare Programs, 72 Col. L.Rev. 1404, 1428–32 (1972).

have been funded under the Federal grant if they had been allowed to function as District Boards instead of being terminated. The likelihood is that in the case of each such plaintiff the loss of funding for quarters and staff is more than $10,000 without aggregation of any kind. "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab, 303 U.S. 283, 289, 58 S. Ct. 586, 590, 82 L.Ed. 845 (1938). I find that as to some of the plaintiffs, the amount in controversy exceeds $10,000 and that the other plaintiffs have claims arising out of a common nucleus of fact and law.

### The Statutory Claim and Pendent Jurisdiction

■ In the case at bar, there is a statutory claim, in any event, arising from the alleged breach of the statutory duty to constitute consumers a majority of the areawide council. That gives this Court federal question jurisdiction under § 1331, provided the matter in controversy exceeds $10,000. Since there is such jurisdiction, the claims said to arise from breach of the commitments in the grant application may be deemed to be pendent to the statutory claim. Cf. Rosado v. Wyman, supra, 397 U.S. at 405, n. 7, 90 S.Ct. 1207; Aguayo v. Richardson, supra, on the theory that the other claims have a "common nucleus" [of law] and fact with the statutory claim. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The question here is one of fairness and judicial economy. See generally, Note, Pendent Jurisdiction, 73 Col.L.Rev. 153, 165–68 (1973).

Whether the plaintiffs, or any of them, are third party beneficiaries of a contract created by acceptance of the grant application may be left for determination on the merits, cf. Euresti, supra, 458 F.2d at 1118. HEW has apparently treated the setting up of District Boards as an obligation of the City Agency. Whether the contract created rights in any of the plaintiffs or whether they are merely incidental beneficiaries is a question of substantive law that should not be decided on a jurisdictional motion. "The 'legal interest' test goes to the merits." Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

### Standing

■ Lastly, we face the question of standing. Standing does not focus on the issues but on the party seeking to get his complaint before a Federal Court. Flast v. Cohen, 392 U.S. 83, 98–99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1963).[6] The Supreme Court in Barlow v. Collins, 397 U.S. 159, 160–161, 90 S. Ct. 832, 25 L.Ed.2d 192 (1970) stated a three-part formula for determining standing: (1) a personal stake and interest that imparts the concrete adverseness required by Article III; (2) being within the zone of interests prohibited by the Act; and (3) no exclusion of judicial review.

In this case we have reasonable assurance that there is concrete adverseness, and there is no statutory exclusion of judicial review. The vital question is whether the plaintiffs come within the zone of interests protected by the Act.

■ In discussing jurisdiction I have already noted that this case differs from the Hill-Burton cases where the beneficiaries are the actual recipients of hospital care. The welfare recipients accorded standing in cases like Aguayo, supra, are also direct beneficiaries. Yet we may analogize the desire to participate in comprehensive health planning as akin to the desire to vote or serve as a public official. See Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). And while the right in Baker is constitutionally derived, the right here is statutorily implied. The injury to the plaintiff need not be economic. Data Processing, supra, 397 U.S. at 154, 90

---

6. See Da Costa v. Laird, 471 F.2d 1146 (2 Cir. 1973).

S.Ct. 827; see Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). I find that there are a number of plaintiffs who, by their past conduct, have brought themselves within the class of persons likely to be considered for election to a District Board, and interested enough to represent community views in the delineation of district lines. Its original status as a coordinating body of the local experimental boards gives the Coalition itself standing on behalf of its members. See *Sierra Club, supra,* 405 U.S. at 737, 92 S.Ct. 1361. While the Coalition may not have standing to challenge the designation of other persons as members of District Boards it has a stake in their creation. Some of these organizations have expended time and money on comprehensive health planning for their communities. The creation of an areawide structure by the Congress gives such persons a stake in it to carry out the Congressional intention for strengthening local participation in the planning for health services.

On the other hand there are several named plaintiffs who, so far as the allegations go, were not directly involved in local health planning. These persons, I believe, have no more standing than would any other citizen. Accordingly, while these persons could be plaintiffs on the theory of pendent jurisdiction, they lack standing to sue for they do not come within the zone of interests test. The complaint is, accordingly, dismissed with respect to Sidney Von Luther, Jesse Gray, Robert I. Postel and Thelma Hamilton.

The motion to dismiss for lack of jurisdiction and standing is denied, except as to the plaintiffs above mentioned. The motion for summary judgment by the plaintiffs is denied.

Further captions in the action shall delete the names of the stricken plaintiffs.

It is so ordered.