**CLINTON COMMUNITY HOSPITAL CORPORATION**

v.

**SOUTHERN MARYLAND MEDICAL CENTER et al.**

Civ. No. 73–981–HM.

United States District Court,
D. Maryland.

April 16, 1974.

William H. Manger, Baltimore, Md., for plaintiff.

Paul M. Nussbaum, Mount Rainier, Md., for defendant Southern Maryland Medical Center.

George Beall, U. S. Atty., District of Maryland, Baltimore, Md., James M. Kramon, Asst. U. S. Atty., and Frederick L. Miller, Jr., Dept. of Justice, Washington, D. C., for Federal defendants.

## MEMORANDUM

### Prior Proceedings

MURRAY, District Judge.

The plaintiff Clinton Community Hospital Corporation (CCH) on October 3, 1973 filed a Complaint for Injunction against Southern Maryland Medical Center (SMMC), allegedly a joint venture consisting of several doctors proposing to organize and construct a new hospital on land owned by the defendant medical center lying some 17,000 feet due south of a major runway serving Andrews Air Force Base in Prince George's County, Maryland.

The plaintiff hospital, located approximately two miles northwest of defendant's proposed hospital site, brought its suit allegedly to enjoin construction of the new facility "for and on behalf of the proposed employees and consumers of the hospital services" to be provided at the new hospital and medical complex. Jurisdiction was invoked under the provisions of the National Environmental Policy Act (NEPA), particularly 42 U. S.C. § 4331(b)(2) and (3), it being the contention of the plaintiff that construction of the new hospital at the site proposed would constitute a risk to health and safety and would have other undesirable and unintended consequences in violation of the spirit and policy of Section 4331(b)(2) and (3) of the Act.

While the original complaint is prolix and replete with unnecessary evidentiary detail, the eighty-six paragraphs spread over 14 pages when sifted down convey plaintiff's view that departing and landing aircraft would pass directly over the proposed facility endangering the patients and employees in several ways. First, it is claimed that the continuous movement of aircraft presents substantial risk of an air accident involving the crash of planes or large debris. Next, the noise created by the aircraft would be unacceptable to patients of the medical center. Third, radar in the aircraft would adversely affect vital equipment such as pacemakers and x-ray units and the latter could alter the guidance systems of the aircraft. The rich fuel mixture employed by incoming and outgoing airplanes would result in heavy fumes and jet ash in the air which would also affect the patients and employees using the facility. Finally, the landing lights of approaching aircraft would enter the

patients' rooms on the southern side of the proposed building.

Plaintiff further contended that defendant obtained approval of the plans for the new hospital by the Health Advisory Committee for Prince George's County after defendant applied for and received a grant of feasibility from the United States Department of Health, Education and Welfare (HEW) to obtain financing from the Department of Housing and Urban Development (HUD), and that such was granted without an environmental impact statement required by 42 U.S.C. § 4332(C) of every agency of the United States before approving major federal actions which may affect the environment. Plaintiff also alleged that HEW was preparing an impact statement not yet released, that considers only the effect of noise pollution.

On October 30, 1973 defendant filed a motion to dismiss under Rule 12(b)(6) asserting that the National Environmental Policy Act does not create any substantive private right whereunder private individuals or corporations can state a cause of action or claim upon which relief may be granted against other private individuals or corporations.

The Court scheduled a hearing on defendant's motion to dismiss for January 3, 1974. On December 28, 1973 plaintiff filed a Motion for Leave to Amend Complaint in order to join HEW and HUD as parties defendant, and on the same day the Court signed an order granting the motion and permitting such amended complaint to be filed.

Following the hearing on January 3, 1974, the Court on January 10, 1974 signed a further order directing plaintiff by January 18, 1974 to file his amended complaint adding HEW and HUD as defendants and asserting plaintiff's claims against those agencies.

On January 17, 1974 plaintiff filed a 53 page Amended Complaint for Injunction containing this time 194 numbered paragraphs, to which was attached a 21 page "Memorandum of Law Filed in Conjunction with Amended Complaint of Injunction" and appended to these two documents are 128 pages of "exhibits" consisting of magazine articles, letters, charts, official correspondence and sundry other material apparently designed to lend factual support to the complaint. The authority for the filing of the "exhibits" is by no means clear. Defendant Southern Maryland Medical Center has renewed its Motion to Dismiss and the two federal defendants Caspar Weinberger, Secretary of HEW, and James Lynn, Secretary of HUD, have moved pursuant to Rule 12(f) to strike the Amended Complaint for Injunction, memoranda of law and documents attached thereto as failing to meet the requirements of Rule 8(a).

### The Amended Complaint

The amended complaint adopts a notable shift in emphasis in that it does not in terms purport to be brought for the benefit of the employees and patients of the new facility defendant Southern Maryland Medical Center seeks to erect. Instead, it now appears that "Plaintiff has a pecuniary interest in the outcome of this proceeding, inasmuch as the construction of the SMMC hospital two miles from plaintiff's existing hospital will result in its eventual closing, since, as a 33 bed hospital, it will be unable to compete with the proposed 200 bed hospital proposed by SMMC."

The amended complaint while complaining principally that defendants are engaged or about to engage in acts and practices contrary to the National Environmental Policy Act (42 U.S.C. § 4321 et seq.) and the Noise Control Act of 1972 (42 U.S.C. §§ 4901–4917), invokes the jurisdiction of this Court on the following basis.

### "Jurisdiction and Venue

3. The action arises under the following Federal statutes:

A. Sections 101 to 104 of the National Environmental Protection Act (42 U.S.C. §§ 4331 to 4334).

B. Section 242(d)(4) of the National Housing Act (12 U.S.C. § 1715z–7(d)(4)).

C. Section 604(a)(1) of the Public Health Service Act (42 U.S.C. § 291d(a)(1)).

D. Comprehensive Health Planning and Public Health Services Act (42 U.S.C. § 246).

E. Noise Control Act of 1972 (42 U.S.C. §§ 4901–4917) as hereinafter more fully appears. The matter in controversy exceeds, exclusive of interest and cost, the sum of $10,000."

Boiled down, the amended complaint sets out four broad claims for relief.

(1) It alleges that NEPA has been violated first in that HEW instead of preparing an Environmental Impact Statement in connection with the proposed project, has prepared a Marginal Environmental Impact Statement (MEIS) addressed only to the impact that the proposed hospital would have on the land selected by Southern Maryland Medical Center, rather than the effect of the already existing environment on the hospital when constructed. Plaintiff in paragraph 100 likens the subject matter of the MEIS "to an examination of the impact of planting a pansy bed in an artillery shell testing field and limiting the inquiry as to what adverse effect the pansy bed will have on the surrounding grass." Plaintiff secondly alleges that the MEIS "avoids the central issue of whether patients, doctors and staff are part of the environment which government agencies are directed to protect under the National Environmental Policy Act." *id.*

(2) As to the violation of the cited section of the National Housing Act, plaintiff has directly alleged only that the HUD mortgage insurance authorized by the section should not be issued in the absence of a proper environmental impact statement. That allegation states, at best, a violation of the NEPA, not of the Housing Act. However, the Court has assumed that the plaintiff is also alleging violations of the conditions

for HUD insurance set out by 12 U.S.C. § 1715z–7 itself.

(3) The complaint further alleges that the Comprehensive Health Planning Act, 42 U.S.C. § 246, has been violated in that the agencies of the State of Maryland operating pursuant to that Act are improperly constituted and have not filed a plan as required by the Act. (These allegations will be discussed in greater detail below.)

(4) The complaint also alleges violations of the Noise Control Act, 42 U.S.C. § 4901 et seq., in that HEW has not consulted with the Administrator of the Environmental Protection Agency concerning research on noise control that might affect the SMMC site. HEW is also alleged to have violated the policy guidelines set out in 42 U.S.C. § 4901(b).

### Motion to Dismiss

Preliminarily, the Court notes that only defendant Southern Maryland Medical Center has moved to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), Fed.R.Civ.P. The federal defendants not having filed such a motion, the question arises whether the Court would therefore be precluded from considering any failure on the part of the plaintiff to state a claim against them. Mantin v. Broadcast Music, Inc., 248 F. 2d 530, at 531 (9th Cir. 1957); Gutensohn v. Kansas City Southern Rwy. Co., 140 F.2d 950 (8th Cir. 1944).

More recently, courts have held that where circumstances warrant, dismissal of the whole complaint on the court's own motion may be proper. Robins v. Rarback, 325 F.2d 929 (2nd Cir. 1963); Sutton v. Hilco Homes Corp., 283 F. Supp. 492, at 494, fn. 2 (E.D.Pa.1968); 5 Wright & Miller, Federal Practice and Procedure, § 1357, at 593, fn. 43. As the Ninth Circuit noted in Dodd v. Spokane County, Washington, 393 F.2d 330, at 334 (1968),

[T]he court in practical effect invoked on its own motion Rule 12(b)(6), Fed.R.Civ.P. This the

court has the right to do if the proper procedural steps were taken and if the determination is correct on the merits.

The court in the latter case held that the procedural steps had not been taken in that the plaintiff had[a] had no notice of the proposed action and no opportunity to file even a written argument. See also Literature, Inc. v. Quinn, 482 F.2d 372 (1st Cir. 1973).

■ It is this Court's conclusion that those procedural steps have been met, or rendered unnecessary, in the instant case. As has been noted, the plaintiff already has been afforded an opportunity to amend its complaint in response to SMMC's first motion to dismiss. That first motion was exhaustively argued at the hearing held on January 3, 1974. Second, the issues raised by SMMC's second motion to dismiss apply equally to the Federal defendants; third, the same issues again have been exhaustively discussed by the plaintiff in a twenty-one page Memorandum of Law, which the Court has treated as an opposition to the SMMC Motion to Dismiss. Consequently, this Court feels that the requirements of fairness and judicial efficiency are best served by considering in a single opinion whether plaintiff has stated a claim on which relief may be granted against *any* of the named defendants.

Additionally, the Court notes that the Federal defendants have filed a Motion to Strike the Amended Complaint, its supporting "Exhibits" and the Memorandum of Law, arguing that they are prolix and confusing and in clear violation of Rule 8. The Court agrees with the observation at page 2 in the Memorandum of Points and Authorities filed in support of that motion that as regards the Amended Complaint "from page 7 to page 51 we are confronted with a confusing mixture of legal allegations, statements of opinion, quotations from documents and hearings in no particular order or discernible pattern. All of this clearly violates Rule 8(e)(1)." Even granting, as plaintiff has argued in its Memorandum in Opposition to the Motion to Strike, that a plaintiff "suing in the environmental context is confronted with a rather harsh burden on its ability to demonstrate standing" and as plaintiff in that memorandum himself admits, a need in this case to "allege those facts tending to demonstrate that the NEPA and the Noise Control Act would be equally applicable to a situation where the proposed project would be the object of the adverse environmental factors, rather than the perpetrator or the one that inflicts harm upon the environment", attaining those goals if they were attainable would be aided more by clarity and brevity than by the prolixity evidenced in the Amended Complaint. In view of the disposal of the suit on the merits, the Court need not determine how to enforce compliance with Rule 8.

Since the respective positions of the parties on whether a cause of action has been stated have been fully set forth both in the oral argument before the Court on January 3, 1974 and in the memoranda subsequently filed, the Court feels no useful purpose would be served by hearing further argument on the point.

### The NEPA Claims

Before addressing the substantive basis of plaintiff's NEPA claim, the Court will consider whether the plaintiff has standing to raise any such claim.

■ The fundamental tests for standing in such a suit as this were set out by the Supreme Court in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The tests are twofold.

First, to maintain an action a plaintiff must show he has sustained actual injury, "injury in fact". Data Processing, 90 S.Ct. at 829; Sierra Club, 92 S. Ct. at 1365. The second requirement is that plaintiff fall within the "zone of interests to be protected or regulated by

the statute or constitutional guarantee in question." Data Processing, 90 S.Ct. at 830.

■ Plaintiff advances what amount to two alternative theories of standing for his NEPA claims. As to one, this Court concludes, he has alleged injury in fact, but does not come within the necessary zone of interest. As to the other, he has not shown injury in fact within the test established by *Sierra Club*.

Plaintiff first asserts standing as a competitor to SMMC. Despite all the references to the environment, it is apparent that plaintiff's real aim is not to improve the quality of life for this and future generations, but rather to prevent the building of a competitive hospital by highlighting the disadvantages of the competitor's site near an existing air base. While showing a real injury, this status is not within the area protected or regulated by NEPA.

In Zlotnick v. District of Columbia Redevelopment Land Agency, 2 ELR 20235 (D.D.C.1972), Judge Gerhard Gesell dismissed a suit by city property owners to enjoin condemnation of their land for urban renewal. Judge Gesell held they could not compel the preparation of a more adequate impact statement, because their object really was the protection of their own financial interests. Judge Gesell in the course of his opinion stated:

> It is not enough that an inadequate environmental impact statement may have been filed for these very preliminary stages of a much larger project that will take years to complete. To have standing grounded on a federal statute plaintiffs must assert an interest 'arguably within the zone of interests to be protected or regulated by the statute . . . in question.' Association of Data Processing Serv. Organizations, Inc. v. Camp, 397 U.S. 150, 153 [90 S.Ct. 827, 25 L.Ed.2d 184] (1970); Blackhawk Heating and Plumbing Co. v. Driver, 433 F.2d 1137, 1140 (D.C.Cir.1970). Plaintiffs

can at best claim only a remote, insubstantial, highly speculative and ephemeral interest in the environment. They have nothing but their own financial interest to protect as their continuing efforts to achieve financial settlement emphasize. Obviously they would abandon their environment concerns in a moment if the price were right.

Similarly in Pizitz, Inc. v. Volpe, businessmen sought to attack an impact statement for a parkway overpass project as inadequate.[1] Although the District Court did consider the sufficiency of the impact statement and held it in compliance with all NEPA standards, it did characterize the suit as a "spurious" NEPA case in language which this Court feels would aptly describe the present suit:

> The Court has characterized plaintiff's case as 'spurious' because, as the pleadings reflect, plaintiff's primary concern in filing and prosecuting this litigation was to avert a threatened loss of business. The environmental aspects of the case were brought in only to maintain the action. Of course, the National Environmental Policy Act was not designed to prevent loss of profits, but was intended only to promote governmental awareness of environmental problems.

Plaintiff has no standing under NEPA as a competitor to SMMC.

A second ground for plaintiff's NEPA claim apparently is that as a hospital it too enjoys the environment, and like any other "consumer" of the environment may seek to prevent harm to it. While plaintiff does not claim economic harm from any lost enjoyment of the environment, the Supreme Court has made clear that injury to "aesthetic and environmental well-being" may also amount to injury in fact. *Sierra Club, supra* 92 S. Ct. at 1366.

The question then is whether a corporation such as the plaintiff can be said to have any "aesthetic" sensitivity. The

1. 2 ELR 20378 (M.D.Ala.1972), aff'd, 467 F.2d 208, 2 ELR 20379 (5th Cir. 1972).

*Sierra Club* case held that even a club with avowed environmental concerns could not sue in its own name if it could not allege any particularized injury. 92 S.Ct. at 1368.

Although conceding that the Sierra Club has a long-standing "special interest" in the environment, the Court felt nonetheless that no injury in fact was shown. A fortiori, the plaintiff in the case at bar—who has not alleged any previous commitment to conservation—cannot show any harm accruing to it from potential damage to the environment.[2]

■ Approaching the question in another way, the argument certainly could be made that corporations are *per se* incapable of suffering "aesthetic" injury. Here one may draw an analogy from the law of privacy. It is clear that corporations do not enjoy a right to privacy. In United States v. Morton Salt Co., 338 U.S. 632, at 652, 70 S.Ct. 357, at 368, 94 L.Ed. 401 (1950), the Supreme Court ruled that corporations could not resist an FTC subpoena on invasion of privacy grounds, saying,

> [C]orporations can claim no equality with individuals in the enjoyment of a right to privacy. [Citation omitted]. They are endowed with public attributes. They have a collective impact upon society from which they derive the privilege of acting as artificial entities.

In Hale v. Henkel, 201 U.S. 43, at 78, 26 S.Ct. 370, at 380, 50 L.Ed. 652 (1906), Justice Harlan concurring, said,

> In my opinion, a corporation—'an artificial being, invisible, intangible, and existing only in contemplation of law' —cannot claim the immunity given by the 4th Amendment; for it is not of

the 'people' within the meaning of that Amendment.

Again, 62 Am.Jur.2d Privacy § 11, at 692 reads,

> Since the right of privacy is primarily designed to protect the feelings and sensibilities of human beings rather than to safeguard property, business, or other pecuniary interests, the courts have denied this right to corporations and other institutions.

While, obviously, some of the concerns that prompted the denial to corporations of the right of privacy are not relevant to their enjoyment of the environment, it is clear that the statement of policy in Section 101 of NEPA, 42 U.S.C. § 4331, especially Subsection (c) ("each person should enjoy a healthful environment. . . .") is directed at the feelings and sensibilities of human beings, and not to "artificial entities".

Accordingly, this Court concludes that plaintiff cannot as a corporation assert an injury to its aesthetic enjoyment of the environment.

While the conclusion that plaintiff is without standing to raise NEPA claims disposes of the issue, the Court also notes that the claims lack substantive basis.

■ Plaintiff's argument that an environmental impact statement must examine the effects of Andrews Air Force Base on the SMMC might have point if plaintiff had built its hospital on the land now owned by SMMC and the United States had then sought to build the Air Base where it is now located. The plaintiff might have a claim under NEPA that the effect of the project (i. e., the Air Base) on the existing environment (including its hospital) would call for an environmental impact study.

---

**2.** The Supreme Court further specifically distinguished and approved its earlier holding that clubs do have standing to sue for injuries to their members. See NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); see also Ward v. Ackroyd, 344 F.Supp. 1202 (D.Md.1972); National Association for Community Development v.

Hodgson, 356 F.Supp. 1399 (D.D.C.1973). Those rulings are of no help to this plaintiff who has not alleged injury to any members, and who has not joined any shareholders or officers, cf. First National Bank of Homestead v. Watson, 363 F.Supp. 466 (D.D.C. 1973).

In the present case, however, the *project is the proposed competitive hospital*, and in the Court's view, under NEPA the involved agencies must consider the effect of the hospital building on the surrounding environment, *not* the effect of the environment on the hospital.

█ Additionally, plaintiff argues that "the people who will be patients, will be working and will be visiting the hospital are themselves a part of the environment and are entitled to those considerations to which the NEPA was directed." [3] If this is the closest the plaintiff can come to a legitimate environmental concern, in the Court's view it is clearly beyond the zone of interests which NEPA protects.

No support can be found, in the text of NEPA, in its legislative history, or in the cases construing it, for this extraordinary and bizarre proposition. The term "environment" is not defined in the Act, but there are indications that it does not include human beings. For example, Section 101(b)(2), 42 U.S.C. § 4331(b)(2) envisions as one of the ends of the national policy, to

assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing *surroundings*. [Emphasis added.]

█ It would be an egregious and unwarranted extension of the scope of NEPA to require that any "major Federal action" which would affect people —thus encompassing virtually every government program—be suspended until an environmental impact statement is prepared. To state the proposition is to show its absurdity.

The Court concludes, therefore, that plaintiff has failed to state a claim upon which relief can be granted under NEPA and that the 194 paragraphs and 53 pages of the amended complaint mount up only to a spurious NEPA suit.

*The Claims under the National Housing Act, 12 U.S.C. § 1715z–7*

█ The section of the Act cited by the plaintiff permits the Secretary of HUD to grant mortgage insurance to nonprofit hospitals, provided certain conditions are met. It appears that plaintiff's asserted claims under this Act are in large measure claims under NEPA. To that extent, they have already been discussed; to the extent they assert other grounds they are prematurely presented.

Plaintiff does not allege that any mortgage insurance has yet been authorized or granted. Paragraphs 4, 5, 6, 94 and 95 of the Amended Complaint. Should such insurance be granted, it is conceivable that plaintiff might have a cause of action, as a competitor to the recipient, under the doctrine of *Data Processing, supra,* and under the provisions of § 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702. However, review of agency action under that Act is authorized only when the action is final. 5 U.S.C. § 704.

The problem [of finality or ripeness] is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial discretion and the hardship to the parties of withholding court consideration.

Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, at 1515, 18 L.Ed. 2d 681 (1967).

In this case, delay will work no hardship on the plaintiff. If HUD insurance is vital to SMMC, construction will not be completed without it; if the insurance is not vital, then CCH accomplishes nothing more by blocking the HUD insurance now than at a later time.

More importantly, it is clear that the issues posed by plaintiff's allegations are not sufficiently concrete to permit review, since HUD has made no decision whatever. See Hanley v. Volpe, 305 F. Supp. 977 (E.D.Wis.1969).[4]

---

3. Plaintiff's "Memorandum In Opposition To Federal Defendant's Motion to Strike", p. 3.

4. Plaintiff alleges that, under a "Memorandum of Agreement" HEW makes determina-

Plaintiff also lists 42 U.S.C. § 291d(a)(1) as a source of its claims, but none of the allegations of the amended complaint involve that statute.[5] Since 12 U.S.C. § 1715z–7(d)(4) refers to this section of Title 42, this Court has assumed that the claimed violation relates only to the HUD claim.

This Court concludes that challenge to the HUD mortgage insurance is premature, and should therefore be dismissed. Should HUD eventually make a determination adverse to plaintiff, that will be the time for plaintiff to consider whether an action can be brought for review.

### Claims under the Comprehensive Health Planning Act 42 U.S.C. § 246

Plaintiff's allegations under this Act require considerable discussion.

42 U.S.C. § 246(a) authorizes the Secretary of HEW to grant funds to the states for comprehensive health planning, provided certain conditions are met. One such condition is that the state designate an agency to receive the funds, § 246(a)(1); under Article 41, Section 59C, Annot. Code of Md., an agency titled the Comprehensive Health Planning Agency (CHPA) is so designated.

Article 43, Section 559, Annot. Code of Md. authorizes the Secretary of the State's Department of Health and Mental Hygiene to license hospitals. Subsection (a–1) of that section directs that no license be granted

unless the hospital . . . conforms to or is not inconsistent with the comprehensive health plan developed and applicable for the particular area. Where no comprehensive health plan has been developed for a particular area, the State's comprehensive

health planning agency shall make the determinations required. This reference is to the comprehensive health plan developed and effective under § 59C of Article 41 of this Code.

The subsection also states:

. . . the Prince George's County health planning advisory committee shall be deemed the interim regional health facilities planning agency for Prince George's County pending designation of a permanent planning agency for any region that shall include Prince George's County.

Plaintiff alleges that the CHPA adopted a plan in 1970, against which the SMMC and CCH proposals (to build and to extend, respectively) were apparently to be measured. Paragraphs 44–54, Amended Complaint.

The County Health Planning Advisory Committee (HPAC) recommended on March 10, 1971 that plaintiff's application for a hospital expansion be denied; on March 29, 1971, the CHPA endorsed that recommendation. On November 1, 1972, a Board of Review of the Department of Health and Mental Hygiene also endorsed those recommendations. Paragraphs 69, 70 and 75 of the Amended Complaint. The Secretary then denied plaintiff a Certificate of Necessity. Paragraph 91. At about the same time, apparently, SMMC's application was approved by the same bodies. Paragraphs 89, 90, 91 and 93.

Plaintiff alleges that the actions of the HPAC, CHPA and the Board were improper, for reasons which by generous inference from the Amended Complaint and plaintiff's Memorandum of Law appear to be:

(1) that the 1970 Plan was disregarded;

---

tions of approvability, and that HUD "as a practical matter . . . under normal circumstances accepts HEW's review and recommendations as the basis for FHA approval." Amended Complaint, paragraph 18. Plaintiff also alleges that HEW has granted SMMC "feasibility . . . approximately nine months ago". Amended Complaint, paragraph 95. This Court does not consider

that these allegations create finality at this stage, since HUD approval while possible and perhaps even probable, is not inevitable.

5. There is a possibility that plaintiff has made assertions meant to apply equally to 42 U.S.C. § 291d(a)(1) and 42 U.S.C. § 246. If that is the case, then the discussion below of 42 U.S.C. § 246 also applies to the claims under 42 U.S.C. § 291d.

(2) that the 1970 Plan was not a Plan as required by law;

(3) that the members and personnel of the HPAC and CHPA were incompetent, biased or both.

These allegations appear to imply three legal claims:

(A) that the actions violated state statutes;

(B) that the actions, insofar as they led to final decisions on licensing both SMMC and CCH, violated 42 U.S.C. § 246;

(C) that the actions, as part of the process leading to HUD Mortgage insurance for SMMC violate 12 U.S.C. § 1715z–7.

■ The first claim does not by itself state a claim cognizable in federal court, as no federal right is asserted. 28 U.S. C. § 1331. Plaintiff's resort to the state courts (Paragraphs 73–77) indicates its recognition of that conclusion.

The second cause of action is more troublesome. CHPA is apparently federally funded; if plaintiff were within the zone of interest of the Act, and if it were injured *directly* by an action of that agency, it may be that it would be able to maintain an action in this Court. New York City Coalition for Community Health v. Lindsay, 362 F.Supp. 434 (S. D.N.Y.1973). But neither condition is met in this instance.

■ If the CHPA acted improperly, it was in violation of both federal and state law. Furthermore, its recommendations were but one step toward the final action of the Secretary of Health and Mental Hygiene. If the Secretary or the Board of Review acted improperly, they were in violation only of state law, since they are neither funded by nor responsible to the federal government.[6] Consequently, the alleged violation of a federal statute is but a minor portion of plaintiff's grievance.

. For that reason, plaintiff has not stated a federal claim within the jurisdiction of this Court.

A mere incidental or collateral federal question may appear or may lurk in the background of the record, but this is not a sufficient or adequate basis upon which federal jurisdiction may attach. Screven County v. Brier Creek Hunting and Fishing Club, 202 F.2d 369, at 370 (5th Cir. 1953)

See also Burgess v. Charlottesville Savings & Loan Assoc., 477 F.2d 40, at 44 (4th Cir. 1973).

Another description of the same doctrine is

that when the controversy between the parties may be decided under local law without the necessity of interpreting a federal statute, there is no federal jurisdiction. Cabana Management Inc. v. Hyatt Corp., 441 F.2d 862, 864 (5th Cir. 1971)

See generally Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Hines v. Cenla Community Action Committee, 474 F.2d 1052 (5th Cir. 1973).

Furthermore, it is doubtful whether plaintiff has standing in these circumstances to challenge the actions or make-up of the CHPA. The primary purpose of the agency under the federal act is to improve the health planning of the state. It is not at all clear that a hospital affected by an action of CHPA pursuant to a wholly separate state statute (Article 43, Section 559) can be held to be within the zone of interest of the federal act under the rule of *Data Processing*. See *Hines, supra*, 474 F.2d at 1056; cf. Gomez v. Board of State Employment Services, 417 F.2d 569 (5th Cir. 1969).

The third claim, as the Court has already described, is not yet ripe for judicial review. The extent to which CHPA's recommendation (even if im-

---

**6.** The Secretary's actions may also be part of the procedure leading to the HUD mortgage insurance. In that character, they are not final actions reviewable by this Court; see pages 457–458 supra.

**460**

properly arrived at) may or may not have contributed to a HUD action adverse to plaintiff can only be determined when such action is final.

*Claims under the Noise Control Act, 42 U.S.C. § 4901 et seq.*

 Plaintiff has cited 42 U.S.C. § 4903(c)(2) as the source of its claim, Amended Complaint, Paragraph 22, and alleges that the section has been violated in that HEW has not consulted with the Environmental Protection Agency concerning the noise in the environment of the SMMC, and in that HEW "has failed to carry out its programs as it relates to the SMMC project in a manner consistent with the policy declared in Title 42, Section 4901(b)." Paragraphs 166 and 167. This Court concludes that the plaintiff lacks standing to bring such an action, for the reasons advanced at the outset of this memorandum in the discussion of standing under NEPA.

It is true that 42 U.S.C. § 4911(a) authorizes suits by private citizens to remedy the "violation of any noise control requirement". However, as defined in Subsection (f) of the same section, a "requirement" is created by regulations promulgated by the Environmental Protection Agency or the Federal Aviation Agency. Plaintiff has alleged the existence of no relevant regulation, and has therefore not stated a claim for which relief can be granted. See, e. g., Burton v. Peartree, 326 F.Supp. 755, at 761 (E. D.Pa.1971); Cross v. Board of Supervisors of San Mateo County, 326 F.Supp. 634 (N.D.Cal.1968), affirmed 442 F.2d 362 (9th Cir. 1971).

### Conclusion

For all the foregoing reasons, this Court will grant the Motion to Dismiss filed by the Southern Maryland Medical Center, and will on its own motion order the dismissal of the action as to defendants Weinberger and Lynn. An order giving effect to this ruling is attached to this Memorandum.