**PROGRESSIVE ANIMAL WELFARE SOCIETY, et al., Plaintiffs,**

v.

**DEPARTMENT OF the NAVY, et al., Defendants.**

**No. C89–498C.**

United States District Court,
W.D. Washington,
at Seattle.

Nov. 3, 1989.

---

John Thomas Costo, Seattle, Wash., for plaintiffs.

Robert Maxwell Taylor, U.S. Attys. Office, Seattle, Wash., and Kenton W. Fulton, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendants.

## ORDER ON MOTION TO DISMISS

COUGHENOUR, District Judge.

### I. Background

A. The Complaint

The Progressive Animal Welfare Shelter ("PAWS") and fourteen other environmen-

tal and animal rights groups brought this action for a preliminary injunction against the Navy's plan to "deploy" Atlantic bottlenose dolphins at the Bangor submarine base. They allege that the defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4232 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, in five different federal actions. The defendants are the Department of Navy ("Navy"), the Department of Commerce ("Commerce"), Secretary of Commerce Robert Mosbacher, Administrator of the National Oceanic and Atmospheric Administration William E. Evans, and the Assistant Administrator for Fisheries in the National Marine Fisheries Service ("NMFS") James W. Brennan. The defendants will be referred to jointly as "the Navy," the plaintiffs jointly as "PAWS."

Under the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361 *et seq.*, Commerce may issue permits for taking dolphins from the wild. Commerce delegated its permit authority to the National Oceanic and Atmospheric Administration and its subagency, NMFS. NMFS issued three such permits to the Navy, in 1974, 1977, and 1987.

Under 10 U.S.C. § 7524, the Secretary of Defense may authorize the taking of up to 25 marine mammals each year, with concurrence by Commerce.[1] This statute was passed in 1986. In 1988, Commerce issued a concurrence letter authorizing the Navy's taking of up to 25 marine mammals per year in 1988–1992. The Navy has decided to use dolphins taken pursuant to 10 U.S.C. § 7524 at the Bangor submarine base.

The five federal actions challenged by PAWS are the three permits issued under the MMPA, Commerce's letter of concurrence for the takings in 1988–1992, and the Navy's decision to use the dolphins at the Bangor base.

---

1. "(a) ... the Secretary of Defense may authorize the taking of not more than 25 marine mammals each year for national defense purposes. Any such authorization may be made only with the concurrence of the Secretary of Commerce and after consultation with the Marine Mammal Commission....

(b) A mammal taken under this section shall be captured, supervised, cared for, transported, and deployed in a humane manner consistent with conditions established by the Secretary of Commerce...."

PAWS alleges that the defendants violated the APA because it was an abuse of discretion to not follow the requirements of NEPA in carrying out these five federal actions. The defendants allegedly failed to meet three different requirements under the APA and NEPA. First, the defendants did not prepare an environmental assessment ("EA") or environmental impact statement ("EIS"). Second, the defendants did not provide a reasoned explanation for their failure to prepare an EA or EIS. Third, the defendants did not meet the wholly independent NEPA requirement that an agency must develop alternatives to actions which involve unresolved conflicts concerning alternative uses of available resources. PAWS further alleges that there was no public notice of the five federal actions. Therefore, it is argued, the plaintiffs' right to judicial review was foreclosed.

At the heart of PAWS' complaint is the concern that the Atlantic bottlenose dolphins taken from the Gulf of Mexico will not be able to withstand the cold temperatures of Puget Sound. PAWS is also concerned that the Navy intends to isolate the dolphins in single holding pens. Both of these concerns are addressed by federal regulations. 9 C.F.R. §§ 3.103(a),[2] 3.109.[3] PAWS believes that the alternative of using dolphins indigenous to cooler waters was not explored, and that compliance with the APA and NEPA would force adequate exploration.

## II. Motion to Dismiss

### A. "Reverse Impacts"

■ The Navy argues that NEPA does not require an EA or EIS for impacts on the project itself, but only for the effect of the project on the pre-existing environment. Therefore, it is urged, the claims that allege that the Navy must analyze the effect of the project on the dolphins under NEPA should be dismissed for failure to

state a claim.[4] The Navy argues that the legislative intent behind NEPA was solely to address the effects of a project on its surrounding environment. It further argues that the implementing regulations do not require analysis of "reverse impacts."

In support of its position, the Navy cites *Clinton Community Hospital Corp. v. Southern Maryland Medical Center*, 374 F.Supp. 450 (D.Maryland), 510 F.2d 1037 (4th Cir.1975), *cert. denied* 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975). In *Clinton* the plaintiff, a hospital, sued the developers of a proposed competing hospital that was to be built near an air force base. The plaintiff claimed that the developers of the proposed hospital did not comply with NEPA, and that the patients in the proposed hospital would suffer from the noisy surrounding environment. The district court emphasized that the suit was brought for economic reasons rather than legitimate environmental concern, and found that the plaintiff had no standing to sue. On appeal, the Fourth Circuit stated:

> [The plaintiff] contends that injunctive relief is in order because of the impact of the existing environment on the proposed hospital. Such a claim turns the statutory scheme 180 degrees around. (emphasis in original) *Id.* at 1038.

*See also Olmsted Citizens for a Better Community v. United States*, 793 F.2d 201, 207 n. 8 (8th Cir.1986) (questioning whether NEPA requires consideration of the effects of the environment on the persons who will use a federal facility). *But see Chelsea Neighborhood Associations v. United States Postal Service*, 516 F.2d 378, 388 (2nd Cir.1975) (holding that project planners must evaluate whether a housing project atop a postal facility would become "a human jungle," unsafe for residents).

PAWS responds that dolphins, unlike buildings, are an integral part of the environment itself. The court agrees that the

---

**2.** "Marine mammals shall not be housed in outdoor facilities unless the air and water temperature ranges which they may encounter during the period they are so housed do not adversely affect their health and comfort...."

**3.** "..... Captive marine mammals must be given access to other animals except when they are temporarily maintained in isolation for such purposes as medical treatment or training and given special attention."

**4.** These are claims five, ten, and fifteen.

cases cited by the Navy provide thin support for the proposition that NEPA does not require analysis of the Navy's plans, in view of the entirely dissimilar nature of proposed buildings and the proposed use of dolphins for military purposes.

The Ninth Circuit provides clearer authority. In *Jones v. Gordon*, 792 F.2d 821 (9th Cir.1986), NMFS issued Sea World a permit to take 100 Orca whales, 10 of them for permanent captivity, pursuant to the MMPA. The whales were to undergo numerous tests, including liver biopsies, gastric lavage, hearing and respiratory tests, tooth extractions, and blood tests. Sea World proposed to tag, mark, and attach radio transmitters to the temporarily held whales.

The *Jones* court held that NMFS acted unreasonably by failing to give a reasoned explanation for its decision to not prepare an EA or EIS. Although issuance of permits for scientific purposes is categorically excluded from NEPA under the MMPA, the court found that the controversy surrounding the proposal created extraordinary circumstances warranting an exception.[5] *Id.* at 828. The court stated that the explanation as to why no EA or EIS was prepared should have addressed concerns expressed by the public, including the fact that Orca whales do not survive long in captivity, that removing a whale from a pod may destroy the social structure of the pod, and that removal may destroy a whale's ability to reproduce.

In *Greenpeace U.S.A. v. Evans*, 688 F.Supp. 579 (W.D.Wash.1987), the court held that NMFS was obligated to prepare an EA or EIS before issuing a permit to a scientist who wanted to obtain skin and blubber samples from resident and transient pods of Orca whales in the Puget Sound. The scientist wanted to use a dart gun to obtain the samples. Like the *Jones*

court, the *Greenpeace* court found that the controversial nature of the action warranted an EA or EIS, even though there is a categorical exclusion from the MMPA for scientific activities. The uncertainty regarding the effect of the experiments on the whales, the precedent set by the permit, and the possibility of cumulative significant impacts also warranted an EA or EIS.[6]

The Navy argues these cases are inapposite because the courts held that NMFS needed to discuss the impact of the action on the native populations, not the impact on the whales themselves. However, the *Jones* court stated that NMFS should consider the short life span of whales in captivity. This is clearly a "reverse impact." It further stated that NMFS should consider the effect of removal on the whales' reproduction and social structure. This effect would apply both to the whales returned to the wild populations and the whales taken to remain in captivity, again a "reverse impact."

Similarly, the *Greenpeace* court noted that the uncertainty surrounding the effect of the project on whales warranted an EA or EIS on the impact of the project on the whales themselves. This case lends itself more easily to the Navy's interpretation that an EA or EIS is required only where there will be an effect on a wild population of marine mammals, because captive whales were not at issue. However, it also supports the argument that an EA or EIS on "reverse impacts" is required when there will be a significant impact on marine mammals which are the subjects of the proposed activities. In either event, it certainly does not run contrary to the *Jones* holding that "reverse impacts" on marine mammals should be subjected to scrutiny under NEPA where they are highly controversial.

5. The context and intensity of the action must be considered in determining whether the action is extraordinary. These factors include the degree to which the action will be controversial. 40 C.F.R. §§ 1508.4, 1508.27, 1508.27(b)(4); *Id.* at 827.

6. Because an EA or EIS clearly should have been prepared, the court did not fully address

Greenpeace's other contentions that there was no reasoned explanation for the failure and that the independent requirement of analyzing alternatives was not met. The court did comment that it found no reasoned explanation in the permit. *Id.* at 586.

PAWS correctly asserts that the decision to use dolphins at Bangor is a major federal action that requires an analysis of the effect of such use on the dolphins themselves. Both *Jones* and *Greenpeace* require a NEPA analysis of the effect of a proposed project on the marine mammals that will be the subject of the project. The controversial nature of the Navy's decision buttresses PAWS' claim. Accordingly, the motion to dismiss claims five, ten, and fifteen on the grounds that NEPA does not require the defendants to discuss the impact of the project on the dolphins themselves is DENIED.

### B. Letter of Concurrence

■ The Navy moves to dismiss the claims that are based on the premise that Commerce's letter of concurrence to the authorization of the Secretary of Defense of a taking pursuant to 10 U.S.C. § 7524 is a major federal action requiring analysis under NEPA.[7] The Navy claims that the concurrence is only a preliminary step to a potential action by another federal agency. Therefore, it does not trigger NEPA.

The Navy contrasts a taking under § 7524, which requires a letter of concurrence, with a taking under the MMPA, which often requires extensive involvement of Commerce in the issuing of a permit. The Navy reasons that the decision of Congress to require only a letter of concurrence rather than a permit indicates that less is required by Commerce under § 7524.

PAWS argues that, while the requirements of the MMPA are explicitly excluded under § 7524, the requirements of NEPA are not. Accordingly, the absence of a permit requirement does not imply that NEPA need not be followed. PAWS believes that the letter of concurrence is an affirmative act that triggers NEPA.

Case law supports PAWS' position. The D.C. Circuit has stated that federal action within the meaning of NEPA includes not only action by the agency itself, but also action permitted or approved by the agency. *Sierra Club v. Morton*, 514 F.2d 856, 875 (D.C.Cir.1975), *cert. dismissed* 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 105 *rev'd on other grounds* 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976); *Defenders of Wildlife v. Andrus*, 627 F.2d 1238, 1244 (D.C. Cir.1980).

The letter of concurrence by Commerce is a major federal action under NEPA. The Secretary of the Defense cannot go forward without this affirmative act by Commerce.[8] *Cf. State of Alaska v. Andrus*, 591 F.2d 537, 540 (9th Cir.1979) (NEPA requires an analysis of potential effects only where the federal government acts affirmatively, not where it fails to act.). The fundamental problem with the Navy's analysis is that it does not provide for NEPA review at any point in the process, yet the Navy's controversial decision to take dolphins from the wild for military use is clearly a major federal action with an effect on the environment. Accordingly, the Navy's motion to dismiss on the grounds that Commerce's letter of concurrence was not a major federal action is DENIED.

■

---

**7.** These are the fourth, ninth and fourteenth claims.

**8.** The statute states:

"Any such authorization may be made only with the concurrence of the Secretary of Commerce and after consultation with the Marine Mammal Commission...."